MEARS (MERCHANTS' NAT. BANK v.). See Case No. 9,450.

MEARS (TWICHELL v.). See Case No. 14,-286.

---

## Case No. 9,380.

### In re MEBANE.

[3 N. B. R. 347 (Quarto, 91).] [1]

District Court, North Carolina.[2] 1869.

BANKRUPTCY—LIENS—JUDGMENTS—PRIORITY—ASSIGNEE—DUTY AS TO PETITIONING COURT—SALE OF ENCUMBERED PROPERTY.

1. L. C., a creditor, recovered two judgments, in a county court of North Carolina, against a debtor, executions on which judgments were enjoined by the United States military commandant. The injunction was thereafter rescinded, and fieri facias were filed, but never delivered to or acted on by the sheriff. Subsequently two other judgments against said debtor were respectively obtained by R. T. and De V. & G., creditors, upon which executions issued, and property of debtor was levied on by the sheriff, before proceedings commenced in bankruptcy. Debtor thereafter was adjudged bankrupt, and assignee was appointed, who agreed with the sheriff that the property so levied on should be offered and sold by the assignee, free from all incumbrances, on account of said executions and levies, and it was sold accordingly. Held, that L. C., the sen-

ior judgment creditor, is not entitled to any of the proceeds of said sale, as he had no perfected lien upon proceedings commenced in bankruptcy.

2. The action of the United States military officer preventing him from issuing executions, does not help or cure the defect.

3. The junior judgment creditors are entitled to have their claims paid pro rata by the assignee out of said proceeds, after deducting expenses, costs, and fees of sheriff and assignee, and this by virtue solely of said agreement.

[Cited in Re Tills, Case No. 14,052.]

4. It is not the duty of an assignee to petition the court respecting the sale of encumbered property of bankrupt, unless he believes such sale will produce a larger fund for the general creditors whom he represents.

[Cited in Re Carrier, 39 Fed. 201.]

5. Assignee may sell encumbered property in his possession without petitioning the court, or without an order of the court, but in so doing he sells subject to lawful encumbrances, but can convey no higher or better interest than he took.

[Cited in Sutherland v. Lake Superior Ship-Canal, R. & I. Co., Case No. 13,643; Re Cooper, Id. 3,190.]

In bankruptcy.

BROOKS, District Judge. This is a case agreed under the provisions of the 6th section of the bankrupt act of March 2, 1867 [14 Stat. 520]. Lewis Cobb recovered two judgments against John A. Mebane, said bankrupt, in the county court of Guilford county, at the August term, 1867. Executions on said judgments were enjoined or forbidden to be issued by the military commandant at the post of Greensboro', who was acting, at that time, under general orders from the headquarters of the Second military district. By reason of the orders of the post commander, no execution issued from the said term. The said order was rescinded in April or May, 1868, and thereupon the clerk of the Guilford county court filled up writs of fieri facias on said judgments, tested of the May term, 1868, which executions were never taken from the clerk's office, and never came to the hands of the sheriff, nor were they in any manner acted upon by the sheriff. At a special term of the superior court of Guilford county, held in December, 1867, two other judgments were obtained against John A. Mebane, said bankrupt, one in favor of Robert Thomas, administrator, and the other in favor of De Varnet & Gerringer; upon which executions regularly issued and were levied by the sheriff of Guilford county, on the real and personal property of the defendant, in February, 1868, and before the commencement by him of proceedings in bankruptcy. The property so levied upon was not sold until after the appointment of an assignee. Subsequently to the appointment of Peter H. Adams as assignee, and the execution of the assignment to him, the said assignee, by the consent of and agreement with the sheriff, sold the real estate so levied upon. Pursuant to said agreement between said assignee and sheriff, the assignee

---

[1] Reprinted by permission.]

[2] [District not given.]

offered said real estate, clear of any and all encumbrances, on account of said executions and levies.

The question presented, and upon which the opinion of the court is desired, is, which of the judgment creditors is entitled to the proceeds of the sale, or so much thereof as will satisfy their debts. It appears to be conceded that if Cobb is not so entitled, the plaintiffs in the junior judgments are. I hold that but for the agreement between said assignee and the sheriff, and the terms of the sale made by the assignee, pursuant to such agreement, neither of the judgment creditors, in the present condition of the claims, would have been entitled to any part of the money realized by the sale. Upon the bankruptcy of a party all right and interest in the whole of the property he has at the time passes to his assignee, excepting only such of it as shall be exempted and subject only to existing legal liens or encumbrances. The bankrupt act respects existing, perfected liens. There is in the 1st section express provision in regard to their ascertainment and liquidation.

The judgments in favor of Lewis Cobb were first obtained, and it becomes necessary to inquire whether such proceedings were had as were necessary to create in his behalf a lien upon the land of the bankrupt, Mebane, before proceedings in bankruptcy in his case were commenced. I do not think any lien was so created in his behalf. The filling up of the fieri facias by the clerk was not issuing the executions. And even if they had been delivered to the sheriff, and he had not acted upon them by making and returning a levy, no lien would have been created in behalf of the plaintiff. In some of the states, by statutory provision, a judgment is made a lien from the time of its rendition. It was not so in North Carolina prior to the enactment of the Code of Civil Procedure. A levy was required to complete a lien. It does not help the plaintiff, Cobb, that his executions were enjoined by military power. He may have been greatly wronged by such interference. But this court cannot repair that wrong. In truth, the plaintiff, from that or some other cause, did not do, or procure to be done, an act indispensable to the perfecting of a lien. This may be set down as one of the many acts, extra constitutional or extra legislative, perhaps, performed by the military authorities subsequent to the cessation of hostilities, wherein powers of a questionable nature, some of them undefined, were exercised, and authority not warranted by law being frequently assumed. It would then be a matter of no surprise if many things were done, resulting in injuries beyond the ability of the courts to remedy, while keeping within the limits prescribed by the constitution and laws.

The next inquiry is: Did the plaintiffs in the junior judgments, at the instance of Robert Thomas, administrator, and De Varnet & Gerringer, so prosecute their claims as to acquire liens before the bankrupt filed his petition in bankruptcy? I think they did. They obtained their judgments, and immediately followed them up by executions, which were received by the sheriff, and by him were levied upon the land of the defendant, who afterwards became a bankrupt. By these proceedings a lien in behalf of these plaintiffs was clearly and perfectly created. It does not follow, however, that the proceeds realized by the assignee's sales of the property so encumbered should be applied to the satisfaction of such executions. If it be ascertained that the property of a bankrupt is encumbered by lien or mortgage, the assignee may, if he shall believe it to be to the interest of that class of creditors whom he especially represents—for instance, the class entitled to pro rata distribution—file his petition, and obtain an order directing him to sell the property encumbered, on such terms as to the court may seem proper, and convey the property freed from such encumbrances. The court will then protect the lien creditors by a proper disposition of the proceeds. But it is not part of the duty of an assignee so to petition, unless he shall believe such a sale will create a larger fund for distribution to creditors generally than if there should be a sale by the mortgagee or sheriff. So in regard to property the title to which is in dispute. The assignee may sell, however, without petitioning the court, or without any order of the court, any property of the bankrupt in his possession encumbered in any manner. But when he so sells, he does so subject to any and all lawful encumbrances, and can convey no higher or better interest. The proceeds of such a sale are supposed to be the price or value of the interest so sold, and with a knowledge of the encumbrances. I think this is not the rule, however, to apply in this case, for the real estate was offered by the assignee in conformity to the agreement with the sheriff, who, with executions in hand, was claiming all his rights under them, concurring with all parties in interest that a sale clear of encumbrances would prejudice no one, but be the surest means of obtaining fair prices. The bidders had good reason to believe that they were bidding for a good title.

It is therefore ordered and decreed by the court that the assignee, Peter H. Adams, of the proceeds of the sales of the property levied upon as aforesaid, pay the executions in favor of Robert Thomas, administrator, and De Varnet & Gerringer, if sufficient, first paying costs of sale, etc., and retaining his lawful commissions. And if the same shall not be sufficient for that purpose, that he pay the cost, and retain his commissions as aforesaid, and distribute the surplus proceeds of such sales pro rata, in the payment of said last-mentioned executions. Let this be certified to the parties to this case agreed.